Frank S. McCullough, J.
This is an application for an order annulling a determination of the New York State Harness Commission denying petitioner’s application for a license as a mutuel clerk, for a further order directing the commission to forthwith issue such license, and for an order determining the constitutionality of such employment.
The petitioner is a special deputy clerk of the Supreme Court. The petitioner on May 16, 1961 filed an application with the New York State Harness Racing Commission for an occupational license as a mutuel clerk. On the same day the commission refused to issue such a license on the ground that the petitioner was a public employee earning $7,500 or more per annum and as such was ineligible for a license under the provisions of the New York State Pari-Mutuel Law.
The Attorney-General appeared on behalf of the commission and demanded by proper notice that the place and hearing of the above proceeding be changed from Westchester County to New York County. Judge Lours J. Capozzoli by order dated *485 July 20, 1961 referred the matter for disposition to Special Term in Westchester County. This court sees no reason why the matter should be referred back to New York County. The statement by the Attorney-General’s office that it should, “ in view of the constitutional questions raised by the petitioner herein and in view of the wide ramifications of any determination of this motion ’ ’ to say the least, does not make a very cogent argument.
The petitioner herein states that the commission has illegally, capriciously, arbitrarily and unreasonably construed section 63 of the Pari-Mutuel Revenue Law (L. 1940, ch. 254 as amd.) by construing the section to mean that a gross salary of $7,500 disqualifies him. It is his contention that if the legislative intent is to make distinction between public employees and public officeholders it violates the spirit of section 10 of article IX of the New York State Constitution and the act is therefore unconstitutional. Petitioner argues that the Legislature, “ fully cognizant of the usual deductions (union dues, taxes, pensions, etc.) from public pay has determined a minimum figure required for current maintenance ”. It is petitioner’s position that the restriction imposed on public employees refers to “ take home pay”.
The history of the Pari-Mutuel Law is fully set forth in Matter of Murtha v. Monaghan (1 A D 2d 178). The section under consideration was originally enacted at the 1954 session of the Legislature as a result of recommendations made by the then Governor Thomas E. Dewey to the Legislature and became chapter 515 of the Laws of 1954. In his memorandum approving the bill the Governor stated in part ‘ ‘ The Racing Commissions are granted the power to refuse to grant or revoke a license of any racing organization which permits a violation of these provisions. Municipalities, however, are permitted by local action to authorize their own employees earning less than $5,000 per year, other than law enforcement officers, to accept such employment. This program vests unusual powers in an administrative agency. It also places drastic and unprecedented limitations upon political officers. I believe these restriction are desirable because the number of licenses for race tracks and the share of pari-mutuel revenues available to them are prescribed by law. Government creates the monopoly and controls its income. These bills are designed to meet a unique situation which does not exist elsewhere in government”. (1954 N. Y. Legis. Annual, pp. 401-402.)
This court at the time of the enactment of the legislation was a member of the Legislature and is quite familiar with the *486 purpose and intent of the Legislature as expressed in debate and in committee meetings. It was originally proposed to bar all municipal employees from employment at race tracks. It was pointed out that in municipalities where tracks were located many civil service employees, teachers and others required outside employment to maintain a decent living standard and that such a prohibition would work a substantial hardship. The bill was fully debated and the legislative intent without question referred not to a limitation on take home pay, as contended here, but a gross salary or compensation. The original $5,000 limitation was an arbitrary figure and did not take into consideration deductions of any kind whether by way of living accommodation benefits or other benefits. In 1957 the limitation was raised from $5,000, to $6,000. The words salary and compensation were used interchange ably as indicated in Governor Rockefeller’s April 22, 1959 veto memorandum in connection with Senate Int. No. 1945, Pr. No. 4307. (Governor Nelson A. Rockefeller’s Public Papers, 1959, p. 267.)
In his memorandum approving Assembly Int. No. 2901, Pr. No. 5786 in 1961 the Governor stated: “ This bill amends the Pari-Mutuel Revenue Law to permit public officers and employees to be employed at race tracks, if their annual governmental salary [italics mine] does not exceed $7,500. instead of the present $6,000. * * * Since the bill now before me confined to eligibility for employment at race tracks, it is consistent with the policy established in 1954 and continued in 1957 when the income limitation was raised from $5,000 to the present $6,000. The Civil Service Employees’ Association recommends approval. The bill, effective immediately, is approved.”
This court is in accord with conclusion reached by the Appellate Division, First Department in Matter of Murtha v. Monaghan (1 A D 2d 178, supra) and holds the petition should be dismissed.